Dr. T. Kenneth James, Commissioner Arkansas Department of Education 4 State Capitol Mall Little Rock, AR 72201-1071
Dear Dr. James:
I am writing in response to your request for my expedited opinion on the following two questions:
 1. If the Parkin School District (Parkin) is annexed to another school district by the Arkansas State Board of Education (SBE) at its September 7, 2005 meeting, will the districts involved in the annexation (which would become effective on September 7, 2005) have the option of establishing a new board of directors pursuant to Act 274 of 2005 (Ark. Code Ann. § 6-13-1412) or must they follow procedures found in Ark. Code Ann. § 6-13-1406?
 2. If Parkin is annexed to another school district by the SBE on September 7, 2005, which annexation would become effective immediately, how would the annexation affect the ability of Parkin teachers, teachers employed by the receiving district, or both, to receive high-priority district incentive bonuses pursuant to Ark. Code Ann. § 6-17-811, if the annexation causes the student population of the resulting [sic: "receiving"][1] district to exceed one thousand (1,000)?
You report that these questions have arisen against the following factual backdrop:
 The Arkansas Department of Education (ADE) has advised Parkin (and the school districts which are contiguous to it) of a meeting to be held by the SBE on September 7, 2005. The purpose of the meeting is for the SBE to consider the ADE's request that Parkin be annexed to another school district, pursuant to Ark. Code Ann. § 6-15-430(a)(5) or Ark. Code Ann. § 6-20-1910, which fall to the jurisdiction of Ark. Code Ann. § 6-13-1403, based upon Parkin's failure to meet academic or fiscal distress requirements.
 ADE's review of Act 274 of 2005 (Act 274) indicates that, for annexations occurring after January 1, 2005, annexing districts may opt to follow Act 274 provided one (1) of the following scenarios apply:
 1. the annexation is conducted pursuant to Act 60 of the Second Extraordinary Session of 2003, or
2. the affected and receiving districts choose to voluntarily annex.
 Act 274 (Ark. Code Ann. § 6-13-1412(a)(1). However, neither of these fact patterns appears to exist here.
 As to the Ark. Code Ann. § 6-13-811 question, the ADE is familiar with Attorney General's Opinion Number 2004-217, but believes that the instant fact pattern (especially with the annexation taking place during a school year) requires a reexamination of the statutory language.
RESPONSE
With respect to your first question, given that the proposed annexation would be neither voluntary nor undertaken pursuant to Act 60 of 2003 (2nd Ex. Sess.), codified at A.C.A. § 6-13-1601 through -1605 (West Supp. 2005), I believe the procedures set forth in A.C.A. § 6-13-1406 would apply. With respect to your second question, I believe that if the receiving district does not itself qualify as "high-priority" under the definition set forth at A.C.A. § 6-17-811(a)(1)(A) (West Supp. 2005), the former Parkin School District teachers would not be eligible to continue in the high-priority district incentive bonus program. However, for the current school year, teachers might be authorized to retain all or part of their incentive bonuses pursuant to A.C.A. §§ 6-17-811(b)(2)(B) and -811(c). Legislative clarification appears warranted.
Question 1: If the Parkin School District (Parkin) is annexed to anotherschool district by the Arkansas State Board of Education (SBE) at itsSeptember 7, 2005 meeting, will the districts involved in the annexation(which would become effective on September 7, 2005) have the option ofestablishing a new board of directors pursuant to Act 274 of 2005 (Ark.Code Ann. § 6-13-1412) or must they follow procedures found in Ark. CodeAnn. § 6-13-1406?
In my opinion, if the Parkin School District is annexed because it is determined to be in academic and/or fiscal distress, the procedures set forth in A.C.A. § 6-13-1406 will apply in establishing a new board.
You report that the proposed annexation may occur pursuant to one or both of the following statutes: A.C.A. § 6-15-430(a)(5) (Supp. 2003), enacted pursuant to Acts 2003, No. 1467, § 16, which authorizes the SBE "[t]o require the annexation, consolidation, or reconstitution" of districts determined to be "in academic distress"; and/or A.C.A. § 6-20-1910
(Supp. 2003), enacted pursuant to Acts 2003, No. 1467, § 18 (Supp. 2003), which affords the SBE the same authority with respect to districts determined to be "in fiscal distress."
Section 1 of Acts 2005, No. 274, which will be codified as A.C.A. § 6-13-1412, contains the following pertinent provision:
 SECTION 1. Arkansas Code Title 6, Chapter 13, Subchapter 14 is amended to add an additional section to read as follows:
 6-13-1412. Board of directors after annexation — Term — Election.
 (a)(1) Notwithstanding any other provisions of law, school districts that annex after January 1, 2005, under Act 60 of the Second Extraordinary Session of 2003 and opt to follow the procedures in this section or school districts that voluntarily annex and opt to follow the procedures in this section shall form a new board of directors made up of the board of directors of the receiving district plus at least one (1) member of the board of directors of each affected district as provided under § 6-13-1406(a)(1)(B)(ii).
* * *
 (h) The provisions of § 6-13-1405 and § 6-13-1406 with respect to the election of a board of directors following annexation shall not be applicable for districts annexed under Act 60 of the Second Extraordinary Session of 2003 and follow the procedures in this section or districts that voluntarily annex and opt to follow the procedures in this section, except the State Board of Education shall allow school districts thirty (30) days to establish an interim local board or as incorporated in this section by reference.
(Emphases added.) The referenced Act 60 of 2003 (2nd Ex. Sess.) added to the Code title 6, chapter 13, subchapter 16 (West Supp. 2005), which sets forth the procedures for administrative annexation or consolidation of districts having an average daily membership of fewer than 350 students.
As reflected in the above discussion, the proposed annexation of the Parkin School District would not occur pursuant to Act 60 in order to comply with this numerical imperative, but rather pursuant to Act 1467 in order to address the district's purported academic and fiscal distress. Moreover, an annexation under Act 1467 is not voluntary but rather mandated by the SBE, see A.C.A. § 6-15-430(a)(5) (compulsory annexation of districts determined to be in academic distress) and A.C.A. §6-20-1910(a) (compulsory annexation of districts determined to be in fiscal distress). Accordingly, as you note in your own analysis, the "fact patterns" that would trigger the application of Act 274 would not exist should the annexation of the Parkin School District occur as you have projected.
Section 6-13-1403 of the Code (Supp. 2003) sets forth the conditions under which the SBE may by compulsion order the annexation of school districts determined to be in academic or fiscal distress. This statute provides in pertinent part:
 (a) The State Board of Education shall consider the annexation of an affected school district or districts to a receiving district or districts under the following conditions:
 (1) The state board, after providing thirty (30) days written notice to the affected school districts, determines that annexation is in the best interest of the affected district or districts and the receiving district based upon failure to meet standards of accreditation or failure to meet academic or fiscal distress requirements pursuant to The Quality Education Act of 2003, § 6-15-201 et seq., the Arkansas Comprehensive Testing, Assessment, and Accountability Program Act, § 6-15-401 et seq., and the Arkansas Fiscal Assessment and Accountability Program, § 6-20-1901 et seq.
(Emphasis added.)
In my opinion, the procedure for determining the composition of the board of a receiving district that has been formed by an SBE-ordered annexation of the sort described in your request is set forth at A.C.A. § 6-13-1406
(Supp. 2003), which articulates, inter alia, the general rules relating to board membership in a district created by an SBE-ordered annexation based upon a failure to meet academic or fiscal distress requirements. Section 6-13-1412 sets up an alternative procedure for selecting a receiving district board that applies only if the annexation was voluntary or occurred pursuant to Act 60, and only then if the districts affected by the annexation opt to proceed under this statute. These conditions would not be met under the scenario described in your request, meaning that the procedural rules set forth at A.C.A. §6-13-1406 would control in establishing a new board of directors.
Question 2: If Parkin is annexed to another school district by the SBE onSeptember 7, 2005, which annexation would become effective immediately,how would the annexation affect the ability of Parkin teachers, teachersemployed by the receiving district, or both, to receive high-prioritydistrict incentive bonuses pursuant to Ark. Code Ann. § 6-17-811, if theannexation causes the student population of the resulting [sic:"receiving"] district to exceed one thousand (1,000)?
In my opinion, assuming the receiving district did not qualify as "high-priority" at the time of the annexation, the receiving district's teachers would not be eligible to receive high-priority district incentive bonuses. The law is unclear regarding whether the former Parkin School District teachers would be eligible to receive some or all of their bonuses during the year of the annexation. I do not believe they would be eligible to receive incentive bonuses in any subsequent year.
Section 6-17-811 (West Supp. 2005), as amended by Acts 2005, Nos. 1962 § 12 2151, § 31, provides in pertinent part:
(a)(1) For purposes of this section:
 (A) "High-priority district" means a district of one thousand (1,000) or fewer students in which eighty percent (80%) or more of public school students are eligible for the free or reduced-price lunch program under the National School Lunch Act and have a three-quarter average daily membership of one thousand (1,000) or fewer for the 2003-2004 school year[.]
In Ark. Op. Att'y Gen. No. 2004-217, which I issued in response to another request by you, I characterized as follows the incentive-bonus program established in A.C.A. § 6-17-811:
 This statute establishes a pilot program whose clear intention is to attract certified, competent teachers to small school districts serving low-income students and to both recruit new and retain existing qualified teachers. This legislation addresses a problem that the Arkansas Supreme Court has characterized as follows:
 Poor school districts with the most ill-prepared students are losing their teachers due to low pay. Both recruitment and retention of teachers are difficult in those districts.
 Lake View School District No. 25 v. Huckabee, 351 Ark. 31, 61, 91 S.W.3d 472 (2002). In the Special Masters' Report to the Supreme Court of Arkansas, filed on April 2, 2004 in the Lake View litigation (Case No. 01-836), the special masters summarized as follows the effect of Act 101:
 Act 101 of the Second Extraordinary Session provides signing bonuses for teachers who teach in high-priority districts — $4,000 at the time of signing a new contract, and $3,000 at the beginning of the next two years the teacher remains in the same district. Dr. James Guthrie testified on February 23, 2004, that he understood that Act 101 would be an important step in helping districts with a concentration of low-income students to have a proper teaching staff, through the use of bonuses to employ and retain them. (Tr. 88)
 As Dr. Guthrie's testimony reflects, the rationale underlying Act 101 is to attract teacher to small districts that educate a high percentage of financially disadvantaged students. In my opinion, this rationale would be completely undermined if the legislation were read as applying to a previously qualifying district whose nature had changed as the result of an annexation or consolidation to the point where the newly formed district would not itself have qualified as a high-priority district.
 Having offered this opinion, I must add that Act 101 is hardly a model of clarity. The legislation is problematic in at least one respect — namely, in its definition of "high-priority district" in terms of the conditions that existed during the 2003-2004 school year. Neither this definition nor any other term of the statute addresses the possibility that districts that qualified as "high-priority" during the 2003-2004 school year might be annexed or consolidated after that school year has ended, creating a resulting district that would not have qualified as a "high-priority district."
In Opinion No. 2004-217, I acknowledged the difficulties in statutory construction just discussed but nevertheless felt able to draw the following conclusion:
 I believe the teacher incentive bonus program set forth at A.C.A. § 6-17-811 applies to any district that qualified as "high-priority during the 2003-2004 academic year and that has not subsequently merged with another district and thereby cured the "high-priority" conditions.
In your request, you refer to my previous opinion and then somewhat cryptically suggest that "the instant fact pattern (especially with the annexation taking place during a school year) requires a reexamination of the statutory language." In my opinion, the fact pattern set forth in your current request differs from the fact pattern set forth in your previous request in two respects: first, your current request deals exclusively with an administrative annexation, as opposed to either an annexation or consolidation; and, secondly, your current request deals only with an annexation that would occur during the school year. As I understand your proposal, the Parkin School District would cease to exist as of September 6, 2005, having been annexed in its entirety into another district. Under these circumstances, I believe the operative inquiry might be whether the receiving district met the conditions to qualify as "high-priority" during the 2003-2004 school year. I believe this possibility exists because a receiving district does not cease to exist, as it would in the case of a consolidation, meaning that, notwithstanding the annexation, under the definition quoted above, it might continue to qualify as "high-priority" based upon its 2003-2004 conditions. However, alternatively, as I suggested in my previous opinion, it may well be consistent with the spirit of the statute to conclude that either an administrative consolidation or an administrative annexation will so change the nature of a district that the teacher-incentive bonus program will not apply. In the present case, I need not choose between these alternative readings of the statute, given the certainty of one proposition — namely, that the Parkin School District would cease to exist pursuant to the proposed annexation. In my opinion, it is logically inconsistent to suggest that the high-priority conditions that applied in a district in 2003-2004 should be imputed to an entirely different district into which the high-priority district is annexed.
Assuming, then, that the receiving district did not qualify as "high-priority" prior to the annexation, I believe it is apparent at least that no teacher in the receiving district would be eligible to receive an incentive bonus. However, there is some question as to whether the teachers from the former Parkin School District who were scheduled to receive bonuses in the current academic year might remain eligible to receive them even after the annexation. The fact that the proposed annexation would occur in the course of a school year raises a potentially significant complication, given that the Parkin School District may have committed itself contractually to pay incentive bonuses to various teachers. In my opinion, to the extent that any such pledge would be inconsistent with the provisions of A.C.A. § 6-17-811, neither the former school district nor the receiving district would be bound to honor it. However, in this regard, pursuant to the following provisions of A.C.A. § 6-17-811(b)(2)(B)(iii), a teacher scheduled to receive retention bonus pay in the Parkin School District may be entitled to all or part of such pay for the current school year even after an annexation:
 (a) If a full-time equivalent teacher is reassigned involuntarily to a position that is not eligible for bonus pay under this section or is dismissed involuntarily by a school district, the teacher shall not be required to repay the applicable bonus pay.
* * *
 (c) Any bonus pay awarded under this section to eligible full-time — equivalent teachers who do not work the entire school year shall be pro-rated based on the portion of the school year that the eligible teacher was employed by the high priority school district.
In my opinion, a reviewing court might be inclined to classify as an involuntary reassignment a teacher's service in a receiving district for the remainder of a school year following an annexation. Any such conclusion would appear to trigger the application of subsection (a) above. Alternatively, if the court concluded that a teacher's reemployment by a receiving district triggered the application of subsection (c) above, the teacher might be eligible to receive at least a prorated bonus. Absent legislative or judicial clarification, I cannot opine as to which, if either, of these statutory provisions might apply.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh
[1] Subsection 6-13-1401(4) defines the term "receiving district" as meaning "a school district or districts that receive territory or students, or both, from an affected district as a result of annexation[.]" Subsection (5) of this statute defines the term "resulting district" as meaning "the new school district created from an affected district or districts as a result of consolidation[.]" Any district that annexes the Parkin School District would be a "receiving district" under the first of these definitions.